UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOHN RALPH KAPIS, III,

    Defendant.

Crim No. 08-463-HA
08-492-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Defendant John Kapis is charged with one count of Felon in Possession of a Firearm in case number 08-463-HA and False Use of Social Security Number, Aggravated Identity Theft, and Possession of a Fraudulent Passport in case number 08-492-HA. Defendant filed a Motion to Suppress Fruits of Searches and Statements of Defendant [49] that is advanced in both cases. This court held an evidentiary hearing on September 21, 2010, at which law enforcement officers and defendant presented testimony. For the following reasons, defendant's Motion to Suppress is denied.

1 -- OPINION AND ORDER

**BACKGROUND**

Defendant was convicted of bank robbery in Arizona federal court in 1994. Subsequently, Oregon state and federal officers began investigating defendant for suspected identity theft. Pursuant to their investigation, officers believed that defendant had used the identities of John Woodrow McCoy III, Steven Paul Spakosky, and John Paul Casey. They suspected that defendant held false passports, birth certificates, driver's licenses, or other identification in these three names.

On October 9, 2007, as part of a national law enforcement initiative entitled "Operation Deathmatch," Diplomatic Security Service Special Agent Clayton Teel located a death record for Spakosky, matched it to identifying information on a passport bearing Spakosky's name, and ascertained that the passport photograph depicted defendant.

Officers subsequently visited a Recreation Vehicle (RV) Park on NE Sandy Boulevard in Portland, Oregon where they believed defendant resided and where he allegedly received Spakosky's birth certificate. The RV staff identified defendant from a photograph and also identified pictures of the Tioga RV in which defendant resided.

Agent Teel also contacted police officers in Bend, Oregon who had spoken with defendant and a person named Shawn Speer. Agent Teel contacted Speer. Speer informed the officers that defendant resided at "Columbia River RV Park" in Portland.

On August 27, 2008, Agent Teel hung a "Wanted" poster at the Gresham Police Department from the Portland Police Bureau and the State Department. The poster was for a suspect named "John Paul Casey" and depicted a color photograph of defendant along with the license plates to the Tioga RV and defendant's truck. The poster included information that

defendant was using a fraudulent Oregon driver's license and United States Passport. Gresham Police Officer James Seymour began working with Agent Teel.

On September 8, 2008, Agent Teel visited the Columbia River RV Park. The manager informed Agent Teel that defendant was currently renting space 113, and that he was due to leave on September 9, 2008. Agent Teel contacted the Gresham Police Department. He told Officer Seymour that he was awaiting a federal arrest warrant.

Based on evidence obtained during the investigation, and after speaking with a Deputy District Attorney, Officer Seymour concluded that probable cause existed to arrest defendant. Later on September 8, six law enforcement officers (two federal agents and four police officers from Portland and Gresham) arrived at the RV park to arrest defendant. Before engaging defendant, Officer Seymour reviewed photographs of defendant (a photograph of defendant from the Arizona Department of Motor Vehicles (DMV) as John McCoy, as well as photographs from defendant's false passport application and the Oregon DMV).

The six officers surrounded defendant's RV and parked a vehicle in front of defendant's truck. Officer Seymour then knocked on a wall of the Tioga RV and called "Hey, John." Defendant allegedly responded unintelligibly. He was then ordered out of the RV. After exiting, Officer Seymour told defendant he was under arrest and to "get on the ground."

State law enforcement arrested defendant for violation of state identity theft laws. Before defendant was read his rights, Officer Seymour asked defendant if he had drugs or weapons in the RV. Defendant said "no." Officer Seymour then asked if he could search defendant's RV and defendant allegedly said "yes."

During the officers' initial search before defendant was advised of his rights, Agent Teel discovered ammunition. Agent Teel exited the Tioga RV and asked defendant where the gun

3 -- OPINION AND ORDER

was located. Defendant told him that it was in a lockbox above the driver's seat. Agent Teel located and seized the gun. In addition, Officer Seymour seized various other items in plain view that related to the state crime of identity theft.

Defendant was then taken to be booked and charged with state crimes. During his ride to the police station he invoked his right to remain silent and to have an attorney. While in the car, defendant revealed his true name, John Kapis.

On September 10, 2008—two days after the arrest and search—Agent Teel submitted an application to this court for a search warrant to search defendant's Tioga RV and truck, as well as to obtain evidence related to defendant's alleged state and federal crimes.

The search warrant application contained the factual information gathered prior to defendant's arrest, and included one paragraph about defendant's consent to search, his subsequent statements, and the seizure of the gun. A Magistrate Judge reviewed the application and authorized the search warrant.

## **DISCUSSION**

Defendant moves to suppress evidence seized following his allegedly improper arrest and his inadequate consent to search. Defendant also moves to exclude evidence seized pursuant to the subsequent warrant that Agent Teel obtained on September 10, 2008.

**1.    Warrantless Arrest**

Defendant contends that he was unlawfully arrested without a warrant when armed police officers surrounded his RV and ordered him to exit. Absent exigent circumstances, the Fourth Amendment to the United States Constitution prohibits the warrantless arrest of a person at home. *Payton v. New York*, 445 U.S. 573, 590 (1980). Accordingly, a warrantless arrest carried out in a person's home is presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740,

748-49 (1984). Although a warrantless arrest of a person in a public place is constitutional, the protection of individuals from unreasonable governmental interference in their homes remains at the very core of the rights safeguarded by the Fourth Amendment. *Murdock v. Stout*, 54 F.3d 1437, 1440 (9th Cir. 1995).

The government contends that defendant was arrested after he voluntarily exited his RV. This court disagrees and finds that defendant was constructively arrested when he was ordered from his RV. *See United States v. Al-Assawy*, 784 F.2d 890, 892-94 (9th Cir. 1985) (holding that coercive police conduct outside a home can result in the arrest of person within the home). Based on the totality of the circumstances, a reasonable person in defendant's position would not believe he or she was free to disobey the officers surrounding the RV. Although the police officers did not physically remove defendant from his RV, defendant was given no choice but to exit the RV on their orders.

The government can overcome the presumption of unconstitutionality for a warrantless arrest in the home only by showing the existence of probable cause and exigent circumstances. *United States v. George*, 883 F.2d 1407, 1411 (9th Cir. 1989). Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Exigent circumstances arise when a reasonable person would believe that the warrantless arrest was necessary to prevent physical harm, the destruction of evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (citation omitted).

5 -- OPINION AND ORDER

Under the circumstances presented, probable cause exists. Federal and state officers had conducted an extensive investigation into defendant's alleged identity fraud. The officers knew that an individual obtained and received government-issued identification documents under the names of John Woodrow McCoy III, Steven Paul Spakosky, and John Paul Casey. They also knew that the real Spakosky died at age fifteen. Based on this information, the officers could reasonably believe that this individual had committed the Oregon crime of identity theft. *See* O.R.S. §165.800(1) ("A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.").

The officers also knew that an individual using these three identities was residing in the specific RV in which defendant was arrested. The officers confirmed defendant's identity with the former owner of defendant's RV and the owner of the RV park. The owner of the RV park told the officers where defendant's RV was parked.

Moreover, both Officer Seymour and Agent Teel viewed defendant's photographs on his Arizona driver's license, Oregon driver's license, and passport, which were under three different names. Once defendant stepped out of his RV, the officers could readily identify defendant as the person using the three different identities. The officers' failure to ask defendant for his name before he was arrested does not destroy the existence of probable cause.

Although defendant cites to this court's recent opinion in *Izguerra-Robles*, 660 F. Supp. 2d 1202 (D. Or. 2009), the facts are distinguishable. In *Izguerra-Robles*, I found that the officers lacked probable cause or even reasonable suspicion to detain the defendant when he was ordered out of a mobile home. *Id.* at 1208. When the defendant was arrested, the officer had merely witnessed the defendant commit minor traffic violations and recognized the defendant's

6 -- OPINION AND ORDER

companion as a person the officer believed was involved in trading personal property for drugs. *Id.* at 1206.

Here, in contrast, defendant's physical appearance had been viewed numerous times by the officers as part of an extensive investigation into his alleged identity theft.  When defendant emerged from his RV, the officers were capable of identifying defendant as the individual with driver's licenses and a passport using different names.  Substantial probable cause existed for defendant's arrest.

Exigency presents a closer question.  No argument is offered regarding whether exigent circumstances existed for arresting defendant in his home without a warrant.  Upon review of the evidence, the government cannot demonstrate that defendant posed any immediate risk of physical harm to the public or any likelihood that evidence would be destroyed.  Although the officers were advised that defendant might be leaving the RV park the day after his arrest, nothing in the record demonstrates that he was intending to escape before the officers could obtain an arrest warrant.

Despite the existing probable cause, the warrantless arrest of defendant in his home cannot be justified without evidence of exigent circumstances.  *See Payton*, 445 U.S. at 588-89 ("[An arrest in the home] is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.") (citation omitted).  Officers could have easily obtained a telephonic arrest warrant before they ordered defendant out of his RV.  The government put forth no evidence showing an inability to obtain a warrant.  To excuse the officers' failure to obtain an arrest warrant solely because probable cause existed would effectively nullify the Fourth Amendment's warrant requirement.  *See United States v. Young*,

573 F.3d 711, 723 (9th Cir. 2009) (holding that "to excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate" warrant requirements established by the Fourth Amendment).

**2.      Consent for the Initial Search**

Defendant contends that his consent to the search of his RV at the time of his arrest was involuntary and therefore invalid. Consent to conduct a search is valid where it is "freely and voluntarily given," and this is a question of fact "'to be determined from the totality of all the circumstances.'" *United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

The Ninth Circuit considers the following five factors in determining whether a person has freely consented to a search:

(1) whether the defendant was in custody;

(2) whether the arresting officers had their guns drawn;

(3) whether rights and warnings as enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966), were explained;

(4) whether the defendant was told he or she had the right not to consent; and

(5) whether the defendant was told that a search warrant could be obtained.

*United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002) (citation omitted).

While no one factor is determinative, *see United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988) (citation omitted), the Ninth Circuit's decisions upholding consent as voluntary are typically supported by at least several of these factors. *Reid*, 226 F.3d at 1026-27 (citations omitted). The Ninth Circuit has also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must] consider the

8 -- OPINION AND ORDER

totality of the circumstances when evaluating consent." *United States v. Cormier*, 220 F.3d 1103, 1113 (9th Cir. 2000) (citation omitted).

The government's burden of demonstrating that the consent was freely and voluntarily given is a heavy one. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (citation omitted). The Supreme Court noted that the determination of voluntariness must take into account police questions and tactics, as well as the possibly vulnerable subjective state of the person who consents. *Schneckloth*, 412 U.S. at 229.

Plainly, defendant was in custody when Officer Seymour sought defendant's consent to search his RV. Defendant was on the ground, in handcuffs, and Officer Seymour testified that he likely had his hand on his weapon. Defendant had not been read his rights before allegedly consenting and was not advised that he was free to refuse consent, or that a search warrant could be obtained. These highly coercive circumstances vitiate the voluntariness of defendant's consent.

Because defendant's consent was invalid, the gun and ammunition found in his RV as a result of the consent search can be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). However, if the government can establish by a preponderance of the evidence that the information would inevitably be discovered by lawful means, then the evidence should not be suppressed. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). The inevitable discovery exception permits the admission of otherwise excludable evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000) (citations and quotations omitted).

9 -- OPINION AND ORDER

The inevitable discovery doctrine cannot justify a warrantless search "simply because the agents had probable cause to seek a warrant but did not." *See United States v. Mejia*, 69 F.3d 309, 319-20 (9th Cir. 1995) ("We reject the contention that [the inevitable discovery] doctrine applies where the police had probable cause to conduct a search but simply failed to obtain a warrant . . . . If evidence were admitted notwithstanding the officers' unexcused failure to obtain a warrant, simply because probable cause existed, then there would never be *any* reason for officers to seek a warrant.") (emphasis in original).

Here, however, the officers did obtain a valid warrant two days later to search defendant's RV. The Supreme Court has made clear that evidence discovered during a subsequent search of a defendant's home pursuant to a valid search warrant issued wholly on information known to the officers before a prior illegal entry and search need not be suppressed. *Segura v. United States*, 468 U.S. 796, 799 (1984). The question presented is whether the subsequent warrant also permits admission of the fruits from the initial invalid search of defendant's RV based on the inevitable discovery doctrine.

When deciding the inevitability of legal discovery of evidence, the court is constrained by "demonstrated historical facts capable of ready verification and impeachment." *Young*, 573 F.3d at 722 (quoting *Nix*, 467 U.S. at 444-45). The government's inevitable discovery must not be speculative, but rather certain to occur absent the original illegal search. *Id.* The purpose of the inevitable discovery doctrine is that if the government would have clearly discovered the evidence, then suppressing the evidence would unfairly put the government in a worse position than if no constitutional violation had occurred. *Nix*, 467 U.S. at 444.

In this case, readily verifiable facts demonstrate that the officers sought and obtained a warrant to search defendant's RV two days after they unlawfully arrested defendant in his home.

10 -- OPINION AND ORDER

The warrant application provided to this court contained the strong evidence that the officers had gathered prior to their encounter with defendant on September 8, 2008, as well as information about defendant's arrest for state crimes.

The search warrant contained only one section—paragraph 31—that relied upon defendant's invalid consent following his arrest, and the evidence seized as a result of the initial search. After severing the offending paragraph, sufficient probable cause still exists that validates the search warrant. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 707 (9th Cir. 2009) (endorsing the doctrine of severance, such that a court may strike invalid portions of a warrant and preserve those portions that satisfy the Fourth Amendment).

Agent Teel credibly testified that individuals are likely to keep important identifying documents, such as driver's licenses and passports, on their person or in their home. This information provides a sufficient nexus linking the place searched (defendant's RV) with the evidence of identity theft likely to be found therein.

The warrant authorized the officers to search for and seize evidence related to defendant's alleged identity theft-related crimes, including identification documents, records, business documents, and money. Officers executing the search warrant would have likely discovered the gun and ammunition located above the driver's seat of the RV because identifying documents are likely to be found in the compartment of a vehicle. *See United States v. Portillo-Reyes*, 529 F.2d 844, 847 (9th Cir. 1975) (noting passport found in the glove compartment). Based on the inevitable discovery doctrine, the evidence seized from the initial search is admissible. However, this court recognizes that the existence of a warrant alone should not excuse prior illegal searches unless it "set[s] in motion an independent chain of events that would have

11 -- OPINION AND ORDER

inevitably led to the discovery and seizure of the evidence despite, and independent of, [the illegal search]." *Hudson v. Michigan*, 547 U.S. 586, 617-18 (2006) (Breyer, J., dissenting).

### 3. Subsequent Warrant Search

Defendant's final argument is that the evidence seized pursuant to the warrant issued on September 10, 2008 should be suppressed because the warrant was overbroad, stale, and lacked a factual nexus connecting the illegal activity at issue to the place to be searched. For the reasons already stated, defendant's arguments are rejected.

### CONCLUSION

For the reasons provided, defendant's Motion to Suppress [49] is denied.

IT IS SO ORDERED.

DATED this  7  day of October, 2010.

                                                     /s/ Ancer L. Haggerty
                                                      Ancer L. Haggerty
                                        United States District Judge